IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GORGEOUS GALS, LLC d/b/a HEY GORGEOUS, | § § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | 1:16-CV-903-RP |
| HEY GORGEOUS! SPA & WELLNESS, LLC, | | |
| Defendant. | | |

## ORDER

Before the Court are cross-motions for summary judgment filed by Plaintiff Gorgeous Gals, LLC d/b/a Hey Gorgeous, (Dkt. 25), and by Defendant Hey Gorgeous! Spa & Wellness, LLC, (Dkt. 28). Having reviewed the filings, the relevant law, and the factual record, the Court issues the following order.

## I. BACKGROUND

Since 2012, Plaintiff has offered spa services in Austin, Texas, using its HEY GORGEOUS mark (the "Mark"). (Pl.'s Mot. Summ J., Dkt. 25, at 1). Defendant, since 2013, has offered spa services in San Antonio, Texas, through its business Hey Gorgeous! (Def.'s Mot. Summ. J., Dkt. 28, at 3). The two businesses are approximately 100 miles away from each other. (*Id.*). Plaintiff has a Texas trademark registration for HEY GORGEOUS under Reg. No. 801764907. (Pl.'s Mot. Summ. J., Dkt. 25, at 5).

Plaintiff sued Defendant on July 25, 2016, claiming trademark infringement and unfair competition under the Lanham Act, as well as trademark infringement, unfair competition, and unjust enrichment under Texas common law. (Compl., Dkt. 1, at 1). Plaintiff filed its Motion for

1

Summary Judgment on July 18, 2017, (Dkt. 25), and Defendant filed its Motion for Summary Judgment on August 10, 2017, (Dkt. 28).

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, it must also "support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331.

Once the movant carries its initial burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by presenting evidence indicating there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court views the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no

reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

On cross-motions for summary judgment, the court examines each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005). "Cross-motions for summary judgment will not, in and of themselves, warrant the granting of summary judgment unless one of the parties is entitled to judgment as a matter of law . . . ." *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). Each party may move for summary judgment using different legal theories that rely on different sets of material facts. *Bricklayers, Masons & Plasterers Int'l Union of Am. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). Nonetheless, cross-motions for summary judgment may be probative of the absence of a factual dispute when they reveal a basic agreement concerning what legal theories and material facts are dispositive. *See id.*

### III. DISCUSSION

*A. Trademark Infringement*

To prevail on its claim of trademark infringement under the Lanham Act, Plaintiff must establish: (1) it possesses a legally protectable trademark and (2) Defendant's use of this trademark "'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act. *Id.* (citing *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 730 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)). Additionally, with respect to infringement, Defendant argues that it is an intermediate junior mark user, which the Court addresses at the end of this section.

1. <u>Possession of a Legally Protectable Trademark</u>

Plaintiff argues that (1) it has a Texas trademark registration for HEY GORGEOUS; (2) it has used the Mark in commerce since early 2012; and (3) its Mark is entitled to protection from infringement by junior users because its degree of distinctiveness is fanciful or arbitrary and at the very least suggestive. (Pl.'s Mot. Summ. J., Dkt. 25, at 5–7). Defendant counters that the Mark is generic and therefore not protected. (Def.'s Mot. Summ. J., Dkt. 28, at 4–9).

a. Presumption of Validity

Much like a federal trademark, a Texas trademark registration creates a statutory presumption of validity, which courts have recognized. For example, in *Igloo Products Corporation v. Brantex, Inc.*, the Fifth Circuit explained that there was a "'presumption of validity' in any trademark for which 'a certificate of registration is issued by the secretary of state under this chapter.'" 202 F.3d 814, 818 (5th Cir. 2000) (citing Tex. Bus. & Com. Code Ann. § 16.15) (internal brackets omitted). Since *Igloo* was decided, the Texas Legislature revised the trademark statute. The new provision that addresses validity states, in relevant part:

> § 16.060. Record and Proof of Registration
>
> * * *
>
> (c) A certificate of registration issued by the secretary of state under this chapter, or a copy of it certified by the secretary of state, is admissible in evidence as prima facie proof of
> (1) the validity of the registration;
> (2) the registrant's ownership of the mark; and
> (3) the registrant's exclusive right to use the mark in commerce in this state in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated in the certificate.

Tex. Bus. & Com. Code Ann. § 16.060.

The former provision, Section 16.15, stated:

> § 16.15. Record, Notice, and Proof of Registration
>
> * * *

4

> (c) A certificate of registration issued by the secretary of state under this chapter, or a copy of it certified by the secretary of state, is admissible in evidence as prima facie proof of
> (1) the validity of the registration;
> (2) the registrant's ownership of the mark; and
> (3) the registrant's exclusive right to use the mark in commerce in this state in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated in the certificate.

Tex. Bus. & Com. Code Ann. § 16.15 (2000).

This Court finds that a presumption of validity applies to the registered mark in this case because (1) the statutory language of Section 16.060(c)(1) exactly tracks the language of the former provision, Section 16.15(c)(1), with respect to validity; and (2) the Fifth Circuit confirmed a presumption of validity exists under the former provision. Moreover, this Court should examine the construction given the Lanham Act as persuasive,[1] and registration under the federal statute invokes a presumption of validity. 15 U.S.C. § 1115(a).

The presumption of validity—under the Lanham Act—"is rebuttable and may be overcome by establishing the generic or descriptive nature of the mark." *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 119 (5th Cir. 1979). In *Amazing Spaces, Inc. v. Metro Mini Storage*, the Fifth Circuit considered whether a registration and its attendant presumption foreclose summary judgment. 608 F.3d 225, 238–39 (5th Cir. 2010). After analyzing Fourth Circuit precedent, as well as cases from other circuits, the Fifth Circuit determined that an accused infringer could introduce evidence that the mark is not

---

[1] In *Emerald City Management, LLC v. Kahn*, the Eastern District of Texas construed a different provision of the Texas trademark statute enacted in 2011 and explained that:

> In adopting this statute, the Texas legislature stated that "the construction given to the Trademark Act of 1946 (15 U.S.C. Section 1051 et seq.) should be examined as persuasive authority for interpreting and construing this Act." Registration and Protection of Trademarks, 2011 Tex. Sess. Law Serv. Ch. 563 (H.B. 3141); *see also Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 738 (Tex. App.—Dallas 2012, no pet.) (stating that Texas courts "look to the Lanham Act and cases thereunder for generally accepted principles of substantive trademark law and to discern meaning and interpretation of the state law provisions").

No. 4:14-CV-358, 2016 WL 98751, at *12 (E.D. Tex. Jan. 8, 2016).

distinctive and therefore reduce the "presumption of validity to evidence that the [Patent and Trademark Office] is of the opinion that the [disputed word or symbol] is sufficiently distinctive to be legally protectable as a mark." *Id.* at 239.

b. HEY GORGEOUS Is Not Generic

The parties' arguments on Plaintiff's claim that the Mark is legally protectable focus on whether the Mark is generic. Their arguments rest on the classification of marks, created by Judge Henry Friendly and adopted by the Supreme Court, in which marks are "[a]rrayed in an ascending order which roughly reflects their eligibility to trademark status and the degree of protection accorded[:] (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Generic marks are not protected, whereas suggestive, arbitrary, or fanciful marks are "inherently distinctive and entitled to protection." *Two Pesos*, 505 U.S. at 768.

The Fifth Circuit has defined generic terms as follows:

> A generic term is the name of a particular genus or class of which an individual article or service is but a member. A generic term connotes the basic nature of articles or services rather than the more individualized characteristics of a particular product. . . . Such terms as aspirin and cellophane have been held generic and therefore unprotectable as trademarks.

*Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir. 1983) (citations and quotation marks omitted), abrogated on other grounds by *KB Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004).

Plaintiff contends, and the Court agrees, that its use of HEY GORGEOUS is not generic. The words HEY GORGEOUS do not connote the basic nature of Plaintiff's business: providing esthetic services. Defendant counters that Plaintiff's slogan—"'Hey Gorgeous' is what everyone will say about you after you visit us"—and the fact that Plaintiff's employees answer the phone "Hey Gorgeous" both show that the Mark is generic. (Def.'s Resp. to Pl.'s Mot. Summ. J., Dkt. 27, at 4–

6

5). The thrust of Defendant's argument is that HEY GORGEOUS is a "common term applied to beauty." *Id.* at 5. Defendant's reasoning is that a person leaves "a salon or spa wishing to look and feel gorgeous, attractive, or beautiful. It is difficult to imagine that one would leave a salon, spa, or beauty shop expecting a different result." (Def.'s Mot. Summ. J., Dkt. 28, at 8–9). In the absence of any evidence supporting Defendant's argument, the Court declines to assume that people frequent salon or spas to look or feel a certain way or that that desired outcome is limited to spas offering esthetic services. In fact, Defendant's reasoning could apply to a number of unrelated businesses like clothing stores or cosmetics boutiques.

Defendant additionally identifies ten out-of-state businesses that use the Mark or something similar to the Mark: "(1) Hey Gorgeous! Group Fitness, a fitness studio located in the Jacksonville, Florida area; (2) Hey Gorgeous! Makeup Artists, a beauty supplies company based in the Miami, Florida area; (3) Hey Gorgeous Salon, a beauty salon located in Spokane, Washington; [(4)] Hello Gorgeous Salon, a beauty salon located in Waunakee, Wisconsin; . . . (5) Hey Gorgeous! Lash & Spray Tan Studio, a beauty salon and spa located in Dothan, Alabama; (6) Hey Gorgeous Hair Studio, located in La Place, Louisiana; (7) Hey Gorgeous, a full-service salon, located in Myerstown, Pennsylvania; (8) Hey Gorgeous, a hair studio located in Phoenix, Arizona; (9) Hey Gorgeous Hair & Nail Salon, located in Cincinnati, Ohio; and (10) Hey Gorgeous Fine Beauty Salon, located The Dalles, Oregon." *Id.* at 7. Defendant also notes there are two in-state businesses using the name "Hey Gorgeous:" (1) an unidentified "beauty salon located in Plano" and (2) "Hey Gorgeous Hair Studio in New Braunfels." (Def.'s Resp. to Pl.'s Mot. Summ. J., Dkt. 27, at 6). Defendant's descriptions of these businesses—which provide services ranging from fitness to hair styling to nails to tanning—undermine its argument. Those services are not among the types of services provided by Plaintiff, (Pl.'s Reply, Dkt. 29, at 3), and the variety of businesses using HEY GORGEOUS, as

7

culled by Defendant, show that the term does not apply to any genus of goods or services. *See Zatarains*, 698 F.2d at 790.

Defendant finally argues that the dictionary definitions of "hey" and "gorgeous" demonstrate that the Mark is generic. Courts may rely on a dictionary to evaluate a term because the "dictionary definition of the word is an appropriate and relevant indication of the ordinary significance and meaning of words to the public." *Id.* at 792 (internal quotation marks omitted). Both parties use Merriam-Webster's dictionaries and propose similar definitions: "hey" is an interjection or verb to call attention, and "gorgeous" means splendidly or showily brilliant or magnificent. (*See* Def.'s Resp. to Pl.'s Mot. Summ. J., Dkt. 27, at 8; Pl.'s Reply, Dkt. 29, at 4). While the word "gorgeous" may be commonly used in the beauty and esthetics industry, (Def.'s Resp. to Pl.'s Mot. Summ. J., Dkt. 27, at 8), it has not been shown to be exclusively used in that industry, and that would seem unlikely given that there are many industries concerned about the splendidly or showily brilliant or magnificent look of a person or object. Moreover, the definition of gorgeous tips the scale in favor of the Mark being, as Plaintiff proposes, suggestive, (Pl.'s Reply, Dkt. 29, at 4), when used in connection with an esthetic services business. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) ("Viewing evidence in the light most favorable to Xtreme, we believe that XTREME LASHES arguably has many of the indicia of a suggestive mark and is therefore entitled to protection. The consumer must exercise some imagination to associate 'xtreme lashes' with 'artificially elongated eyelashes.'") (internal citations and quotation marks omitted). The Court therefore finds that Plaintiff's Mark is not generic.

   c. Plaintiff's Mark Is Entitled to Protection

Plaintiff also claims that its Mark is entitled to protection "because its degree of distinctiveness is fanciful or arbitrary or at the very least suggestive." (Pl.'s Mot. Summ. J., Dkt. 25,

8

at 6). The *Zatarains* Court defined the remaining categories of terms—descriptive, suggestive, arbitrary or fanciful—as follows:

> A descriptive term identifies a characteristic or quality of an article or service such as its color, odor, function, dimensions, or ingredients. Descriptive terms ordinarily are not protectable as trademarks; they may become valid marks, however, by acquiring a secondary meaning in the minds of the consuming public. Examples of descriptive marks would include "Alo" with reference to products containing gel of the aloe vera plant and "Vision Center" in reference to a business offering optical goods and services. As this court has often noted, the distinction between descriptive and generic terms is one of degree. The distinction has important practical consequences, however; while a descriptive term may be elevated to trademark status with proof of secondary meaning, a generic term may never achieve trademark protection.
>
> A suggestive term suggests, rather than describes, some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of the goods and services. A suggestive mark is protected without the necessity for proof of secondary meaning. The term "Coppertone" has been held suggestive in regard to sun tanning products.
>
> Arbitrary or fanciful terms bear no relationship to the products or services to which they are applied. Arbitrary and fanciful marks are protectable without proof of secondary meaning. The term Kodak is properly classified as a fanciful term for photographic supplies; Ivory is an arbitrary term as applied to soap.

698 F.2d at 790–91 (citations, brackets, and quotation marks omitted).

The Court next evaluates whether the Mark is descriptive, suggestive, arbitrary, or fanciful. The Mark is not a descriptive term because it does not identify a characteristic or quality of a service. *Id.* HEY GORGEOUS does not describe any of the esthetic services Plaintiff provides. Having found the Mark is not descriptive, the Court considers whether the Mark is suggestive, arbitrary, or fanciful. Plaintiff contends that its Mark, "at the bare minimum," is "suggestive as the consumer must exercise some imagination to associate HEY GORGEOUS with esthetic services" and that the Mark is arbitrary or fanciful since "the words HEY GORGEOUS bear no relationship to the

9

services to which applied." (Pl.'s Mot. Summ. J., Dkt. 25, at 6–7 (quotation marks omitted)). In *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, the Fifth Circuit considered the mark Xtreme Lashes and determined that it had many of the indicia of a suggestive mark, in part, because a "consumer must exercise some imagination to associate 'xtreme lashes' with 'artificially elongated eyelashes.'" 576 F.3d at 227. There, the mark had the word lashes in the name, whereas here, nothing about HEY GORGEOUS directly ties it to esthetic services like facials. The Court finds that the Mark is at least suggestive but declines to find whether it reaches the level of being arbitrary or fanciful because that determination does not affect the Court's remaining analysis. Since the Mark is at least suggestive, the Mark is entitled to protection.

2. Likelihood of Confusion

The Court turns to whether Defendant's mark is likely to cause confusion with Plaintiff's. *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985). A plaintiff must demonstrate "a probability of confusion," not just a mere possibility. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008). The Court examines these nonexhaustive "digits of confusion" in evaluating likelihood of confusion: (1) the type of trademark, (2) mark similarity, (3) product similarity, (4) outlet and purchaser identity, (5) advertising media identity, (6) defendant's intent, (7) actual confusion, and (8) care exercised by potential purchasers. *Id.* No factor is solely dispositive; yet a "finding of likelihood of confusion need not be supported by a majority of the factors." "While likelihood of confusion is typically a question of fact, summary judgment is proper if the 'record compels the conclusion that the movant is entitled to judgment as a matter of law.'" *Xtreme Lashes*, 576 F.3d at 227 (quoting *Smack Apparel*, 550 F.3d at 474). The factors are discussed, in turn, below.

a. Type of Trademark

As discussed above, marks are typically assigned to "categories of generally increasing distinctiveness"—(1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful—with the "latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, . . . deemed inherently distinctive and [are] entitled to protection." *Two Pesos, Inc.*, 505 U.S. at 768. This Court already determined that Plaintiff's Mark is not generic or descriptive and is suggestive, arbitrary, or fanciful. *See supra* Section III.A.2. Because Plaintiff's Mark is a stronger mark entitled to protection, this factor weighs in favor of Plaintiff.

b. Similarity of the Marks

Assessing the similarity of the competing marks "requires consideration of the marks' appearance, sound, and meaning." *Smack Apparel*, 550 F.3d at 479. "The more similar the marks, the greater the likelihood of confusion." *Streamline Prod. Sys., Inc.*, 851 F.3d at 454 (citing *Nautilus Grp., Inc. v. ICON Health & Fitness, Inc.*, 372 F.3d 1330, 1344 (Fed. Cir. 2004)). "Even if two marks are distinguishable, [a court asks] whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association." *Xtreme Lashes*, 576 F.3d at 228. Likewise, the Court should "give more attention to the dominant features of a mark." *Id.*

Plaintiff argues the marks in this case are identical. Defendant contends there are "critical differences" like different fonts, the inclusion of an exclamation point with Defendant's, and Plaintiff's pair of eyes and brows where one eye is winking. (Def.'s Mot. Summ. J., Dkt. 28, at 13). Giving more attention to the dominant features, both marks use the same words "HEY GORGEOUS" and use a similar cursive script. (Compl., Dkt. 1-1 & 1-3); *see Dallas Cowboys Football Club, Ltd. v. Am.'s Team Properties, Inc.*, 616 F. Supp. 2d 622, 638 (N.D. Tex. 2009) ("The two marks contain the identical wording: 'America's Team.'"). The dissimilarities are fairly minor: Plaintiff's

Mark includes the winking set of eyes with eyebrows, and Defendant's has an exclamation point after "HEY GORGEOUS." This factor weighs in favor of finding a likelihood of confusion.

    c. Product Similarity

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Xtreme Lashes*, 576 F.3d at 229 (quoting *Exxon Corp. v. Tex. Motor Exch. of Hous. Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)). Here, there is great similarity between the services offered by the parties. Plaintiff points out that Plaintiff and Defendant offer the same services: "facial treatments with pore cleansing, exfoliation and extractions; waxing and laser hair removal; microdermabrasion, chemical peels, and dermaplaning." (Pl.'s Resp. to Def.'s Mot. Summ. J., Dkt. 30, at 11; Moorman Dep., Dkt. 30-7, at 8; Compl., Dkt. 1-1 & 1-2). Those services also entail using some of the same ingredients, (Compl., Dkt. 1-2; Hernandez Dep., Dkt. 30-6, at 45–47). The services at both businesses are performed by estheticians. (Hernandez Dep., Dkt. 30-6, at 17; Moorman Dep., Dkt. 30-7, at 10–12). Defendant does not dispute or address this factor. The similarity of services weighs in favor of a finding of likelihood of confusion.

    d. Outlet and Purchaser Identity

Plaintiff and Defendant market their services to a similar customer base, depending on the service. (Hernandez Dep., Dkt. 30-6, at 29; Moorman Dep., Dkt. 30-7, at 28). Defendant does not contest that overlap but argues that there is a lack of competitive proximity because the businesses are approximately 100 miles apart. The parties present some evidence that, for each of their businesses, a small number of clients hail from the other city. (Pl.'s Resp. to Def.'s Mot. Summ. J., Dkt. 30, at 15; Def.'s Resp.to Pl.'s Mot. Summ. J., Dkt. 27, at 12–15 (summarizing customer data)). While the customer bases are similar and the businesses both are located in Central Texas, the Court finds this factor to be neutral.

    e. Advertising Media Identity

"The greater the similarity in the [advertising] campaigns, the greater the likelihood of confusion." *Exxon Corp.*, 628 F.2d at 506. Plaintiff demonstrates that both companies use the Internet extensively to advertise, including their respective websites and also sites like Facebook and Yelp. (Compl., Dkt. 1-1 & 1-3). These identical or similar channels of advertisement support a finding of likelihood of confusion. Moreover, Plaintiff presented evidence that a Google search for HEY GORGEOUS retrieves the Plaintiff's and Defendant's websites as top hits. (Google search result, Dkt. 30-8); *see Jones v. Am. Council on Exercise*, 245 F. Supp. 3d 853, 864 (S.D. Tex. 2017) (finding in favor of a likelihood of confusion where the parties advertised on their websites and social media and "[p]otential customers looking for a course like this will likely find both certifications by using a search engine").

    f. Defendant's Intent

On this factor, the parties present conflicting evidence. Plaintiff claims that Defendant was aware of Plaintiff's Mark in 2013 when Defendant sent Plaintiff a LinkedIn request. (Hookstra Decl., Dkt. 30-8 ("On or about January 2013, I . . . received a LinkedIn request from the LinkedIn account of Defendant . . . .")). Defendant denies it sent the request. (Hernandez Decl., Dkt. 27-3 ("I have never sent a friend request on behalf of my business to Plaintiff . . . on LinkedIn . . . nor am I aware of anyone who has.")). Defendant concedes, however, that this factor "weighs weakly, if at all, in favor of likelihood of confusion." Therefore, the Court finds that this factor weighs weakly in favor of Plaintiff and a finding of likelihood of conclusion.

    g. Actual Confusion

"Evidence that consumers have been actually confused in identifying the defendant's use of a mark as that of the plaintiff may be the best evidence of a likelihood of confusion. It is well established, however, that evidence of actual confusion is not necessary for a finding of a likelihood of confusion." *Smack Apparel Co.*, 550 F.3d at 483. "Moreover, reason tells us that while very little

13

proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." *Xtreme Lashes, LLC*, 576 F.3d at 229 (5th Cir. 2009) (quoting *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971)).

Plaintiff provides evidence that some customers have been confused about whether Defendant is affiliated with Plaintiff. Specifically, Plaintiff submits the declarations of four customers who wondered whether or assumed that Defendant's business was a San Antonio location of Plaintiff's business. (Khan Dec., Drew Decl., Collopy Decl., and Luling Decl., Dkts. 25-1, 25-2, 25-3, 25-4). Those customers then inquired with Plaintiff whether there was an affiliation. (*Id.*). One customer, after viewing Defendant's website, drove by Defendant's business and noted that the signage and location looked similar to Plaintiff's. (*Id.* at 25-4). While Plaintiff does not provide evidence of a customer following through with a purchase of services from Defendant, Plaintiff's evidence of confusion shows confusion about affiliation. *See Jones*, 245 F. Supp. 3d at 866–67 (finding that a plaintiff showed some customers were actually confused about affiliation and therefore the factor weighed in favor of Plaintiff). This factor weighs in favor of Plaintiff and a likelihood of confusion.

h. Care Exercised by Potential Purchasers

Plaintiff contends that because the marks and services are nearly identical, the degree of care exercised by purchasers holds little to no weight. (Pl.'s Mot. Summ. J., Dkt. 25, at 17 (citing *Weiss Associates, Inc. v. HRL Associates, Inc.*, 902 F.2d 1546 (Fed. Cir. 1990)). Plaintiff's own evidence shows that some potential purchasers exercise some degree of care. For example, Plaintiff's customer declarations chronicle four customers online searches—and in one case an additional in-person look at Defendant's business—with follow-up on the part of the customers to inquire with Plaintiff about whether Defendant was affiliated *before* they purchased a service from Defendant. (Khan Dec., Drew

Decl., Collopy Decl., and Luling Decl., Dkt. 25-1, 25-2, 25-3, 25-4). Defendant does not address this digit of confusion. Without more, this Court finds that this factor is neutral or weighs in favor of Defendant.

In sum, the digits of confusion weigh in favor of a finding of likelihood of confusion.

3. Intermediate Junior Mark User

In its Motion for Summary Judgment, Defendant claims it is an intermediate junior user who adopted the Mark after Plaintiff but before Plaintiff registered the Mark and who therefore may use the Mark in Bexar County, the county in which San Antonio is located. (Dkt. 28, at 17–20). Defendant relies on *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2d Cir. 1959), a case that has been followed within the Fifth Circuit. In *Dawn Donut*, the Second Circuit concluded that the junior user of a mark could continue to use the mark in its limited trade area because the two markets did not overlap geographically. This Court declines to apply *Dawn Donut* in this case. Here, the markets are not completely distinct as evidenced by the, albeit limited, overlap of customers between Austin and San Antonio for both Plaintiff and Defendant. Moreover, the businesses are approximately 100 miles apart, and both are located in the Central Texas region. *See Dunkin' Donuts Inc. v. Mercantile Ventures*, No. EP-91-CA-154-B, 1992 WL 156566, at *10 (W.D. Tex. Jan. 8, 1992) (evaluating the *Dawn Donut* defense and finding that "Mazatlan, Mexico is not a sufficiently distinct and separate market such that public confusion is not possible. Mazatlan is a popular tourist location for United States citizens."). The Court accordingly rejects Defendant's claim for summary judgment on its *Dawn Donut* defense.

**B. Unfair Competition**

In addition to federal claims, Plaintiff brings a claim for common law unfair competition under Texas law. (Compl., Dkt. 1, at 7). Defendant contends that Plaintiff's state law claim for unfair competition is barred by the statute of limitations under Section 16.003 of the Texas Civil Practice

15

and Remedies Code. Under Texas law, an unfair competition claim must be brought within two years. *Derrick Mfg. Corp. v. Sw. Wire Cloth, Inc.*, 934 F. Supp. 796, 806 (S.D. Tex. 1996) (holding that a two-year statute of limitations applied to a plaintiff's Texas common law unfair competition claim in a trademark case). In this case, Plaintiff admitted that it knew of Defendant's business in 2012 or 2013. (Moorman Depo., Dkt. 28-1, at 56). Plaintiff filed its lawsuit in 2016. (Compl., Dkt. 1). Defendant's motion for summary judgment with respect to Plaintiff's Texas common law claim for unfair competition is therefore granted.

### C. Unjust Enrichment

In its Complaint, Plaintiff states that the "acts of Defendant complained of herein constitute unjust enrichment of Defendant[] at the expense of Plaintiff." (Dkt. 1, at 8). Plaintiff also states: "Defendant's unauthorized use of 'Hey Gorgeous' unjustly enriches Defendant at Plaintiff's expense. Defendant has been and continue[s] to be unjustly enriched by obtaining a benefit from Plaintiff by taking undue advantage of Plaintiff and its goodwill. Specifically, Defendant has taken undue advantage of Plaintiff by trading on and profiting from the goodwill in the HEY GORGEOUS Mark owned by Plaintiff, resulting in Defendant wrongfully obtaining a monetary and reputational benefit for its own business and services." (*Id.* at 6).

Under Texas law, a "party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage." *Heidenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). The doctrine "applies the principles of restitution to disputes which for one reason or another are not governed by a contract between the contending parties." *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), *aff'd*, 966 S.W.2d 467 (1998). Here, Plaintiff requests summary judgment on its unjust enrichment claim but fails to brief the issue or present evidence to support its claim. Therefore, this Court denies summary judgment on Plaintiff's unjust enrichment claim.

16

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Plaintiff Gorgeous Gals, LLC d/b/a Hey Gorgeous's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. The Court grants summary judgment on Plaintiff's claims for trademark infringement. The Court denies summary judgment on Plaintiff's claim for unjust enrichment.

**IT IS FURTHER ORDERED** that Defendant Hey Gorgeous! Spa & Wellness, LLC's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. The Court denies Defendant's summary judgment on trademark infringement. The Court grants summary judgment in Defendant's favor on Plaintiff's claim for common law unfair competition.

**SIGNED** on November 2, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE